# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| STATE EX REL. WOODRIDGE LOCAL SCHOOLS, et al., | : <br> : <br> : Case No. 5:19-CV-1046 |
| Plaintiffs, | : <br> : Judge John R. Adams |
| v. | : <br> : |
| FACEBOOK, INC., | : **ORDER** |
| Defendant. | : <br> : |

This matter is before the Court on the motion of Defendant Facebook, Inc. to dismiss the Amended Complaint of Woodridge Local Schools, Cuyahoga Falls City School District, City of Dayton Public Schools, Logan Hocking Local School District, Springfield City School District, Lake Local School District, Toledo City School District, and Northern Local School District (collectively, "Plaintiffs"). Defendants request dismissal for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim under Fed R. Civ. P. 12(b)(6). Having considered the parties' arguments, the evidence, and applicable law, the Court hereby ORDERS that the motion to dismiss (Doc. 11) is GRANTED, for the reasons set forth below.

## I. BACKGROUND

ECOT (the Electronic Classroom of Tomorrow) was a community, or charter, school under Ohio law. Plaintiffs are school districts which had resident students enrolled in ECOT at the time ECOT ceased operations in January of 2018. Plaintiffs allege that in the six years prior to ECOT's closure, ECOT received large amounts of money that otherwise would have been paid to Plaintiffs but for the enrollment of these students in ECOT. Plaintiffs contend that they lost millions of dollars to ECOT during this timeframe. Plaintiffs further allege that educational

1

opportunities, such as additional teachers, were lost by Ohio's public school districts as a result of ECOT's "massive" overbilling of the public.

Administrative proceedings in 2017 and 2018 determined that ECOT owed money to the State of Ohio for funds it had improperly received. ECOT became insolvent and liquidation proceedings were initiated in January 2018 to preserve its assets. A special master was appointed to handle ECOT's assets, including its potential claims.

The special master sought court approval to assign claims to the State of Ohio. The court approved the special master's motion for assignment of claims to the State. Subsequently, the same eight school districts that are Plaintiffs here, represented by the same counsel as in this matter, requested an assignment of ECOT's claims arising out of payments made to various entities. The court denied Plaintiffs' motion as it had already assigned ECOT's claims to the State.

The State of Ohio brought a lawsuit asserting claims relating to ECOT's collapse on August 21, 2018. Plaintiffs attempted to intervene in the action. The court again denied Plaintiffs' attempt to pursue ECOT's claims, finding that the schools' interests were adequately represented by the State.

Here, Plaintiffs again seek to recover on claims that were assigned to the State. Specifically, Plaintiffs seek to recover from Defendant Facebook funds that ECOT paid to Facebook totaling $92,903.61 in 2016 and $150,000.00 in 2017. Facebook allegedly placed ads for ECOT in exchange for these payments. Plaintiffs allege that ECOT made those payments to Defendant without receiving "reasonably equivalent value" under Ohio law.

Defendant Facebook now has moved to dismiss under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Court turns to the merits of those motions.

## II. LEGAL STANDARDS

**Fed. R. Civ. P. 12(b)(1)**

A party may move to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. "When a defendant attacks subject matter jurisdiction under Rule 12(b)(1), the plaintiff must meet the burden of proving jurisdiction." *Cline v. United States*, 13 F. Supp. 3d 868, 870 (M.D. Tenn. 2014), (citing *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005)). A motion to dismiss under Fed. R. Civ. P. 12(b)(1) based upon a lack of subject matter jurisdiction is generally presented in two ways, as facial challenges or as factual challenges. *Lovely v. United States*, 570 F.3d 778, 781-82 (6th Cir. 2009); 2A James W. Moore, Moore's Federal Practice ¶ 12.07 [2.-1], at 12-50 to 12-55 (2d ed. 1996). When a court reviews a complaint pursuant to a factual attack to subject matter jurisdiction, no presumption of truthfulness applies and the court must weigh evidence to arrive at a factual justification for subject matter jurisdiction. *See Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The court has wide discretion to allow affidavits and documents. *Id.*

**Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a court to grant a motion to dismiss when a complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a motion to dismiss under Rule 12(b)(6),the court must treat all factual allegations as true and construe the complaint in a light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

## III. DISCUSSION

Defendant Facebook argues that Plaintiffs' Amended Complaint is facially deficient and should be dismissed under Rule 12(b)(1) because Plaintiffs do not qualify as creditors under Ohio's Fraudulent Transfer Act, and the Complaint makes allegations on behalf of the State without setting forth any facts or law that establish Plaintiffs' authority to do so. Indeed, Plaintiffs are admittedly pursuing claims that belong to the State. Defendant argues that "Plaintiffs may not jump into the shoes of the State and pursue claims that do not belong to them." (Doc. 11, p. 5.) The Court agrees.

Plaintiffs seek to recover based on two sections of the Fraudulent Transfer Act, O.R. C. §§ 1336.04(A) and 1336.05(A). However, the plain language of those two sections limits standing to a creditor who has been harmed. Indeed, § 1336.05(A) refers to "[a] transfer made on an obligation incurred by a debtor [that] is fraudulent as to a creditor . . ." As one court explained, "[A] plaintiff must have standing as a creditor" to pursue a fraudulent transfer claim under the Act, which creates a right of action for creditor to set aside a debtor's allegedly fraudulent transfer of assets to a third party. *Poss v. Morris*, 2015-A-0009, 2015-Ohio-5337, ¶ 26 (Ohio Ct. App.). Plaintiffs do not allege that they have a right or "claim" to payment against ECOT. Therefore, they are not creditors under Ohio's Fraudulent Transfer Act and lack standing to pursue these claims.

In attempt to create "creditor" status under the Act, Plaintiffs rely on O.R.C. § 3314.074(A). This section is part of Ohio's chapter on community schools. The statute orders the redistribution of funds of a closed community school (like ECOT) first to certain entities and individuals not relevant here, with any remaining funds turned over to the Department of Education for redistribution to the school districts. O.R.C. § 3314.074(A). Nowhere does the

4

statute provide that school districts will, or are entitled to, receive a direct distribution from the funds of a closed community school. Rather, to the extent that funds are available, they are to be paid to the Department of Education.

Plaintiffs essentially acknowledge that any funds they recover would have to come from the State, not from ECOT or Facebook. The Amended Complaint says, "[t]his action is brought in order to have ODE redistribute monies, pursuant to O.R.C. § 3314.074(A), to school districts which had students enrolled in ECOT at the time it closed, including the Plaintiffs." (Am. Compl. ¶ 42 (emphasis added).) Again, this language begs the question of how Plaintiffs can use this case against Facebook to compel action by the Ohio Department of Education. But even putting that extraordinary question to the side, O.R.C. § 3314.074(A) does not give Plaintiffs a claim or "right to payment" necessary to make them creditors. Thus, the Complaint is facially flawed and dismissal is warranted.

Even the structure and allegations of the Complaint show that Plaintiffs attempt to bring claims that can only be asserted by the State. As discussed, O.R.C. § 3314.074(A) does not suggest that individual school districts have the right to pursue claims to recover the assets of a closed community school. Rather, the statute makes clear that the State alone, through ODE, is responsible for collecting and distributing any remaining funds to the relevant school districts. Accordingly, the State, not Plaintiffs, has the right to assert claims to recover ECOT assets.

Plaintiffs acknowledge this in several ways. First, the Amended Complaint is captioned "State Ex. Rel.," meaning the claims asserted belong to the State. Second, Plaintiffs unsuccessfully requested the Attorney General to pursue these claims, and have offered no authority that they may now pursue a fraudulent transfer claim that the State has not assigned to them. Third, the State Board of Education Decisions attached to the Amended Complaint direct

5

ODE to "take such measures as necessary to collect the overpayment from ECOT." Finally, Plaintiffs admit in the "wherefore" clauses of both counts that they are requesting relief "on behalf of ODE."

Together, these allegations demonstrate that the State owns these claims. The Amended Complaint lacks any facts to show that Plaintiffs have the power to pursue the State's claims. Thus, on the face of the Amended Complaint, Plaintiffs lack standing to pursue their claims against Facebook.

Plaintiffs attempt to bootstrap standing by asserting that they are bringing these claims as a "relator" on behalf of the Ohio Department of Education. It is Plaintiffs' burden to establish they have standing to pursue claims on behalf of the Ohio Department of Education. *Murphy v. Nw. Sch. Dist.*, No. 5:12CV2429, 2013 U.S. Dist. LEXIS 52283, at *8 (N.D. Ohio Apr. 9, 2013) (Adams, J.) (citing *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996)). However, Plaintiffs do not provide any case law or statutory authority to support that merely invoking the term "relator" meets the jurisdictional requirement of standing.

To the contrary, Ohio law is abundantly clear that litigants proceeding as relators must either satisfy traditional standing requirements or show "rare and extraordinary issues that threaten serious public injury." *See, e.g.*, *State ex rel. Carlson v. State Bd. of Pharmacy*, No. 18 MA 0006, 2018-Ohio-3102, at *3 (Ohio Ct. App.); *State ex rel. Ullmann v. Husted*, No. 14AP-863, 2015-Ohio-3120, at **12 (Ohio Ct. App.). Plaintiffs cannot satisfy those requirements because they are not creditors of ECOT and have neither pleaded nor argued that "rare and extraordinary issues" are present in this case.

Moreover, at best, a relator action could allow Plaintiffs to pursue a lawsuit against the Ohio Department of Education to have ODE redistribute monies. As Defendant has aptly argued:

> Merely invoking the term "relator" does not give Plaintiffs license to manufacture standing to sue Facebook. In at least one way, Plaintiffs' claims are similar to typical relator claims, which are brought against *a state entity* in order to compel the state to perform some legal obligation (or prohibit same). *See, e.g.*, *State ex rel. Fenske v. McGovern*, 11 Ohio St. 3d 129, 133, 464 N.E.2d 525, 529 (1984) (complaint seeking to recover compensation from the state pursuant to statutory right to payment stated a mandamus action); *Carlson* at *18. Indeed, Plaintiffs' Opposition reiterates that they are seeking action *by the State*: "This action is brought in order to have ODE [the Ohio Department of Education] redistribute monies, pursuant to O.R.C. § 3314.07(A), to school districts which had students enrolled in ECOT at the time it closed, including the Plaintiffs." (Opposition at p. 4 (quoting Am. Compl. ¶ 42).) Yet Plaintiffs improperly attempt to bring this suit against *Facebook*, and not the State.

(Doc. 16, p. 3.)

Indeed, styling the Amended Complaint as a relator action does not confer standing to sue Facebook in lieu of the State. The Amended Complaint is facially deficient Accordingly, Plaintiffs lack standing. The Amended Complaint is therefore dismissed for lack of jurisdiction.

Further, the Amended Complaint is factually deficient. The State is the proper entity to bring claims for the recovery of funds under O.R.C. § 3314.074(A). Moreover, any right that ECOT had to pursue those claims was assigned to the State during the liquidation proceedings. Nothing in the court's assignment order extends that right to Plaintiffs. Additionally, subsequent to the assignment order, the court explicitly declined to grant these same Plaintiffs an assignment of ECOT's claims because the claims already had been assigned to the State of Ohio. Plaintiffs offer no explanation as to why they may pursue the instant claims without an assignment by the State. That Plaintiffs do not own the claims is fatal to their case and requires dismissal.

Facebook argues that the Complaint also should be dismissed for failure to state a claim. The Court again agrees.

Plaintiffs' Amended Complaint makes conclusory allegations reciting elements of a fraudulent transfer claim, but fails to allege any facts supporting those conclusory allegations. As numerous courts have held, a plaintiff alleging a fraudulent transfer claim must provide at least some facts showing that reasonably equivalent value was not provided. *See Goldstein v. BRT, Inc. (In re Universal Mtg.)*, 460 B.R. 828, 837 (Bankr. E. Dist. Penn. 2011) (finding that merely parroting the relevant statutory provision does "not provide a factual foundation that would permit a court to conclude that the complaint states a plausible claim for relief"). Plaintiffs have neglected to do so in this case.

Plaintiffs' argument is that ECOT's insolvency somehow demonstrates that the payments ECOT made to Facebook for advertisements were not for reasonably equivalent value. This argument is ineffectual. ECOT's alleged insolvency does not demonstrate to any extent whether ECOT received equivalent value for any transfers it made. Rather, "determination of whether value was given under Section 548 should focus on the value of the goods and services provided rather than on the impact the goods and services had on the bankrupt enterprise." *See Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 F. App'x 337, 341 (6th Cir. 2006) (quoting *Orlick v. Kozyak (In re Fin. Federated Title & Trust, Inc.)*, 309 F.3d 1325, 1332 (11th Cir. 2002)). The Plaintiffs here have failed to allege any facts that make their fraudulent transfer claims plausible. Accordingly, Rule 12(b)(6) compels dismissal.

Plaintiffs have asked that as an alternative to dismissal that this Court allow amendment. The Court declines. With their Opposition, Plaintiffs offer a proposed Second Amended Complaint that still fails to allege any facts supporting the conclusion that ECOT did not receive

reasonably equivalent value in an arms-length transaction. The new paragraph 45 from the proposed Second Amended Complaint states only: "These payments appear to have been for the placement of ads on the Defendant's social media platform. The value of the ads was not reasonably equivalent to the payments made to the Defendant by ECOT." These new allegations add what ECOT received in return for its payments – ad placements – but still do nothing to explain why those ad placements lacked reasonably equivalent value beyond a conclusory recitation of the fraudulent transfer statute. *See In re Universal Mktg.*, 460 B.R. at 837. Accordingly, amendment would be futile. Instead, the Amended Complaint is dismissed with prejudice.

## IV. <u>CONCLUSION</u>

For all of the aforementioned reasons, Defendants' Motion to Dismiss (Doc. 11) is GRANTED. Plaintiffs' Amended Complaint is dismissed with prejudice under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.


IT IS SO ORDERED.

DATED:1/7/2020                                          <u>John R. Adams</u>---------------------------
                                                                            JOHN R. ADAMS
                                                                           UNITED STATES DISTRICT JUDGE